NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 12-609

STATE OF LOUISIANA

VERSUS

CLEVELAND TROY BIAS

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 68872
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

AFFIRMED.

**Michael Harson**
**District Attorney**
**15th Judicial District**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Beth Smith Fontenot**
**Louisiana Appellate Project**
**P. O. Box 3183**
**Lake Charles, LA 70602**
**(337) 491-3864**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Cleveland Troy Bias**

**Frederick Lewis Welter**
**Attorney at Law**
**P. O. Box 635**
**Rayne, LA 70578-0635**
**(337) 334-8951**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Cleveland Troy Bias**
**Riverbend Detention Center**
**9450 Hwy. 65 South,**
**Lake Providence, LA 71254**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Cleveland Troy Bias**

**PETERS, J.**

The defendant in this case, Cleveland Troy Bias, appeals his conviction for distribution of cocaine, a violation of La.R.S. 40:967(A). For the following reasons, we affirm the defendant's conviction in all respects.

The State of Louisiana (state) charged the defendant with the distribution offense by a bill of information issued on February 17, 2006. The bill of information sets the date of the offense as July 12, 2005. After a two-day trial beginning September 25, 2007, a jury found the defendant guilty as charged. On March 3, 2008, the trial court sentenced the defendant to serve ten years at hard labor, and after numerous other legal proceedings, the trial court granted the defendant an out-of-time appeal on January 27, 2012. In that appeal, the defendant's counsel asserted one assignment of error:

> Mr. Bias' constitutional right to a fair trial was violated by the trial court's erroneous denial of defense counsel's challenge of a juror for cause, forcing Mr. Bias to excuse the juror with a peremptory challenge and ultimately exhaust all twelve of his peremptory challenges.

Additionally, the defendant asserted seven pro se assignments of error:

1.   The trial court never proved that petitioner possessed or distributed cocaine.

2.   The arrest affidavit contains erroneous addresses.

3.   There were discrepancies in the handling of the evidence.

4.   The photo line-up prejudiced the defendant.

5.   The trial records and transcripts were incomplete; specifically, the opening and closing arguments transcripts were absent.

6.   Ineffective assistance of legal counsel.

7.   post verdict motion for acquittal/no pretrial motions

***Pro Se Assignment of Error Number One***
Because this assignment of error addresses the sufficiency of the evidence,

we will consider it first. A finding that the trial evidence was insufficient to support the verdict would necessitate a reversal and render consideration of the remaining assignments of error moot. *State v. Hearold*, 603 So.2d 731 (La.1992).

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

In this assignment of error, the defendant challenges the undercover narcotic agent's identification of him as the individual to whom he sold crack cocaine. Specifically, he asserts that the testimony of the undercover agent and two other law enforcement officers was not sufficient to prove beyond a reasonable doubt that he sold crack cocaine given that the transaction was not electronically recorded.

Lieutenant Dale Thibodeaux, the chief narcotics officer of the Acadia Parish Sheriff's Office, testified that on July 12, 2005, he was running an undercover narcotics operation in Acadia Parish with the assistance of Deputy Sheriff Chris McBride of the Acadia Parish Sheriff's Office and Cedric Handy, an undercover agent on loan from the St. Landry Parish Sheriff's Office. On that date, he equipped Deputy Handy with an audio device so the deputy could be monitored for his own personal safety during his undercover activity. The device does not record

2

the ongoing conversations, but does allow other officers to monitor the situation in real time. At approximately 4:00 p.m., Lt. Thibodeaux heard Deputy Handy make contact with an individual identified as "Troy" on the monitor, and to ultimately enter into a narcotics transaction with him. Being familiar with the defendant, Lt. Thibodeaux recognized his voice and was able to identify him. At approximately 4:29 p.m., Lt. Thibodeaux met with Deputy Handy at a discreet location and secured the two rocks of crack cocaine that the defendant had sold to the agent.

Deputy Handy testified that he was indeed working as an undercover narcotics agent in Crowley, Louisiana, with Lt. Thibodeaux and Deputy McBride during the late afternoon of July 12, 2005. While equipped with an audio device for his own personal safety, he purchased crack cocaine from the defendant. The transaction took approximately five minutes, after which he met with Lt. Thibodeaux and exchanged the purchased cocaine. When asked how he could be sure that his identification of the defendant was reliable after such a short encounter, Deputy Handy testified that he was trained to look for an identifying mark or other unique feature of the individual. He noted that the defendant "has a [sic] eye that's kind of lazy." Approximately four months after the narcotics transaction, Deputy Handy picked the defendant out of a photographic lineup. A review of the pictures used in the lineup reveals that the defendant does in fact have distinctive, protruding eyes. In making an in-court identification of the defendant as being the individual from whom he purchased the crack cocaine on July 12, 2005, Deputy Handy stated that he was "a hundred percent" confident that his identification was correct.

In considering the defendant's assignment of error, we first note that it is well settled that, if believed by the trier of fact, the testimony of a single witness can support a conviction. *State v. Marshall*, 04-3139 (La. 11/29/06), 943 So.2d

3

362, *cert. denied*, 552 U.S. 905, 128 S.Ct. 239 (2007). Additionally, the defendant does not suggest that this was a case of misidentification. Rather, he appears to challenge the agent's credibility and/or the lack of evidence supporting his credibility.

Furthermore, he contends that the testimony of Lt. Thibodeaux and Deputy Handy is hearsay because it is not supported by an electronic recording. The direct testimony of a witness concerning what he or she might have done or seen is not hearsay. La.Code Evid. art. 801.

In considering the defendant's argument, we note that credibility determinations were within the jury's prerogative.

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 28. Clearly, the jury believed the victim's version of events, and Hypolite's brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

We find no merit in this assignment of error and turn next to the sole assignment filed by the defendant's counsel.

***Counsel's Assignment of Error***

The defendant argues in this assignment of error that the trial court erred in denying his challenge for cause against a potential juror who gave equivocal answers regarding whether she could decide the case fairly. Specifically, the defendant's counsel challenged Beverly Leger's ability to serve as a juror in this

4

case based on her responses to questions propounded by the state. In response to one question, Ms. Leger acknowledged that she had two nephews who had been incarcerated for illegal narcotic activity, but when asked how that would affect her ability to be fair and impartial, she responded, "It's kind of hard to say." When asked whether she could listen to all the evidence and render a fair and impartial verdict based on all of the evidence presented, she responded that "I guess I could." In response to these answers, the trial court then explained to Ms. Leger that she would have to set aside her personal experience with drug use and abuse, and require the state to prove the defendant's guilt beyond a reasonable doubt. When asked by the trial court if she could follow those instructions, she responded, "It might be kind of hard." When she was asked by the trial court to explain her answer, Ms. Leger stated that "Because I am totally against drugs and, uh – it would just be hard to make a decision, knowing what my two nephews went through." The trial court then again asked if she could follow the instruction requiring that she put her personal feelings aside, and she responded, "I – I think I could."

At a later time, Ms. Leger was asked additional questions by the defendant's counsel, and in, response to those questions, she acknowledged that she has a cousin who is a Louisiana State Trooper, that she was the victim of an armed robbery approximately twelve years before trial, and that her daughter had been robbed approximately one week after her unfortunate experience. When asked by the defendant's counsel whether these facts would keep her from being fair and impartial, she stated, "I don't think so."

> A criminal defendant has the fundamental right to have a jury determine whether he may be guilty or innocent; whether the state proved all elements of the crime beyond a reasonable doubt. La. Const. art. I, § 17; *State v. Lacoste*, 256 La. 697, 237 So.2d 871 (1970). Nevertheless, this fundamental right would become

meaningless if not guided by the principle that the jury should be impartial in order to ensure that the criminal defendant receives a fair trial. This principle does not mean that a criminal defendant has the right to be tried by a particular type of jury or juror, but it simply means that it is essential that the jury be impartial and competent. *State v. McLean*, 211 La. 413, 30 So.2d 187 (1947); *State v. Lewis*, 98-904 (La.App. 3 Cir. 12/9/98); 724 So.2d 830, *writ denied*, 99-0438 (La.11/12/99); 749 So.2d 649. To ensure that the jury is competent and impartial, La. Const. art. I, § 17 provides safeguards, such as the defendant's "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily."

The purpose of voir dire is to test the competency and impartiality of prospective jurors to determine whether they are fit to serve on the jury. Voir dire is designed to uncover information about the prospective jurors, which may be used as a basis for challenges for cause or exercise of peremptory challenges. *State v. Berry*, 95-1610 (La.App. 1 Cir. 11/8/96); 684 So.2d 439, *writ denied*, 97-0278 (La.10/10/97); 703 So.2d 603. When a defendant exposes the partiality of a juror, the juror may not be automatically excluded for cause. The state or the trial court may rehabilitate the juror by asking questions and obtaining answers demonstrating the juror's ability to decide the case impartially pursuant to law and evidence. Ultimately, the trial court has the power to determine whether or not a juror may be excused for cause. *State v. Turner*, 96-845 (La.App. 3 Cir. 3/5/97); 692 So.2d 612, *writ denied*, 97-2761 (La.2/20/98); 709 So.2d 773.

To succeed on appeal with the claim that the trial court erroneously denied the challenge of a prospective juror for cause, a defendant must exhaust his peremptory challenges and show that the trial court's denial of his challenge for cause was an abuse of discretion. *State v. Cross*, 93-1189 (La.6/30/95); 658 So.2d 683; *State v. Robertson*, 92-2660 (La.1/14/94), 630 So.2d 1278; *appeal after remand*, 97-0177 (La.3/4/98); 712 So.2d 8, *cert. denied*, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998); *Turner*, 692 So.2d 612. Once these factors have been established, prejudice is presumed and need not be shown by the defendant. *Id.*; *Cross*, 658 So.2d 683. In *Cross*, the Louisiana Supreme Court stated that a trial court's erroneous ruling on a challenge for cause, depriving the defendant of one of his peremptory challenges, "constitutes a substantial violation of [the defendant's] constitutional and statutory rights, requiring reversal of the conviction and sentence." In *Turner*, 692 So.2d at 616, we wrote:

> The trial judge is vested with broad discretion in ruling on challenges for cause, and his ruling will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. *State v. Robertson*, 630 So.2d 1278. "A trial judge's refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently,

on further inquiry or instruction, [the juror] has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence." *Cross*, 658 So.2d at 687. *See also State v. Welcome*, 458 So.2d 1235 (La.1983), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152; *State v. Passman*, 345 So.2d 874, 880 (La.1977). In this case, defendant exhausted all of his peremptory challenges. Thus, the only question left for our determination on appeal is whether the trial judge erred in denying defendant's challenge seeking to excuse [the prospective juror] from the jury venire for cause.

Therefore, we must consider whether the trial court committed error in denying Defendant's challenge for cause . . . .

*State v. Schmidt*, 99-1412, pp. 29-31 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, 148-49, *writ denied*, 00-2950 (La. 9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205 (2002).[1]

The record in the matter before us indicates that the defendant used all of his peremptory challenges. Additionally, Ms. Leger's responses can fairly be considered equivocal. However, the jurisprudence indicates such equivocation is not fatal to the selection or rejection of a prospective juror.

Prospective juror, Kristine Orillion, was a member of the first voir dire panel. After voir dire, defendant challenged Ms. Orillion for cause on the basis that she stated the victim's age would automatically cause her to be biased against defendant. The trial court denied defendant's challenge and defendant subsequently used one of his peremptory challenges to excuse Ms. Orillion.

Prospective jurors, Marian Grows and Madelynn Gonzales, were members of the second jury panel. Defendant challenged Ms. Grows for cause on the basis she could not be fair and impartial due to the age of the victim and challenged Ms. Gonzales for cause on the basis she stated the evidence would make her feel as if she were being violated. Defendant ultimately used a peremptory challenge to exclude Ms. Gonzales from the jury, but Ms. Grows was ultimately seated as a juror.

All three challenged jurors, Orillion, Grows, and Gonzales, had expressed some concern that the youthful age of the victim would affect their ability to be impartial. Ms. Orillion stated she had a twelve-year-old daughter. She explained "they are, children" and "in

---

[1]Defendant cites *State v. Wallace*, 11-1258 (La.App. 3 Cir. 5/30/12), 92 So.3d 592, which cited *Schmidt*.

7

a way, defenseless and aren't as strong to fight off that type of offense[.]" When defense counsel specifically asked whether the fact the victim was twelve years old would affect her ability to be impartial, Ms. Orillion replied, "[i]t possibly may."

Ms. Orillion's seemingly equivocal response of "it possibly may" is subject to various interpretations depending on the tone of voice, facial expressions and body language used by the prospective juror. The trial court heard Ms. Orillion's answers and witnessed her facial expressions and body language throughout the entire voir dire. It is because of the trial court's superior position to make such a judgment call that the appellate courts use an abuse of discretion as the standard of review.

A review of the entire voir dire shows Ms. Orillion was instructed on the law and never indicated an inability or unwillingness to follow it. Thus, the trial court did not abuse its discretion in denying defendant's challenge for cause of Ms. Orillion based on her equivocal response that something might affect her ability to be impartial.

*State v. Strickland*, 04-843, pp. 15-16 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 895-96, *writ denied*, 05-820 (La. 6/17/05), 904 So.2d 683.

In another case, the fifth circuit briefly surveyed other relevant jurisprudence:

The trial court did not err in denying defendant's challenge for cause as to Mr. Heulster. Viewing Mr. Heulster's responses as a whole, it appears he was able and willing to follow the law as instructed. He stated that he would not allow himself to be influenced by outside information about the case, and he told the judge that he could give a fair and impartial hearing to both the state and the defense.

Compare *State v. Frank*, [99-553, p. 19 (La. 1/17/01), 803 So.2d 1, 18] in which the court held that if a juror who has acquired knowledge about the case through the media can sufficiently lay aside his or her impression of the defendant's guilt or innocence and render a verdict based on the evidence presented, he or she is competent to serve as a juror.

In *State v. Hoffman*, [98-3118 (La. 4/11/00), 768 So.2d 542, *cert. denied*, 531 U.S. 946, 121 S.Ct. 345 (2000)], the trial court denied the defendant's cause challenge of a juror on grounds that she appeared to have formed an opinion about the case based on media coverage she had seen. In the defendant's view, the juror gave a vague response to the trial court's question of whether she could put aside what she had heard and base the verdict on the evidence. She answered, "I think that I could. Coming into the jury pool, I sort of--

like, I was going to have preconceived notions, but I don't know anything about this defendant, so I think I could." [*Id.* at 561.] The Supreme Court noted that, standing alone, the juror's response might seem ambiguous, but that her responses as a whole indicated her opinion would yield to the evidence presented. The juror acknowledged that media accounts were frequently inaccurate, and that she could make a decision based on the facts presented at trial.

Mr. Heulster gave far less equivocal responses than did the juror in *Hoffman*. Mr. Edwards firmly stated that he had not drawn any conclusions as to who had committed the murder, or as to Stein's guilt or innocence. Based on the foregoing, the trial court's denial of challenges for cause as to jurors Vasseur and Heulster do not constitute reversible error.

*State v. Stein*, 04-23, pp. 20-21 (La.App. 5 Cir. 4/27/04), 874 So.2d 279, 292-93, *writ denied*, 04-1345 (La. 11/8/04), 885 So.2d 1122 (footnotes omitted).

In light of the facts presented and the jurisprudence cited, we cannot conclude that the trial court abused its discretion in refusing to grant the defendant's challenge for cause against Ms. Leger. Therefore, we find no merit in this assignment of error.

### Pro Se Assignment of Error Number Two

In this assignment, the defendant claims that the affidavit supporting the arrest warrant and the warrant itself listed the wrong addresses. However, even if true, he does not suggest what relief this error allows him to receive. Additionally, the record does not reflect that the affidavit or arrest warrant was ever admitted into evidence in the trial court. Therefore, it is not a proper subject for appellate review. *See, e.g., State v. Vincent*, 07-90 (La.App. 5 Cir. 10/16/07), 971 So.2d 363.

We find no merit in this assignment of error.

### Pro Se Assignment of Error Number Three

The defendant captions this assignment as a challenge to "discrepancies in the handling of evidence." However, the body of his argument again challenges

the credibility of the officers' testimony in the context of *Jackson*, 443 U.S. 307, 99 S.Ct. 2781. This challenge has already been addressed and denied.

We find no merit in this assignment of error.

***Pro Se Assignment of Error Number Four***:

The defendant captions this assignment of error as a claim that his trial counsel was ineffective in that he failed to file a motion to suppress the identification. However, the body of his argument does not contain an ineffective assistance of counsel claim. Rather, it is a basic argument that the photographic line-up that Officer Handy viewed was suggestive. We interpret this to mean that the defendant is suggesting that his trial counsel was ineffective for failing to challenge the suggestiveness of the photographic lineup.

> Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this court in *State v. Washington*, 491 So.2d 1337, 1339 (La.1986), a reviewing court must reverse a conviction if the defendant establishes: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.

*State v. Leger*, 05-11, p. 44 (La. 7/10/06), 936 So.2d 108, 142-43, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007).

With regard to the issue of suppressing an identification, "[a] defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure." *State v. Prudholm*, 446 So.2d 729, 738 (La.1984). Additionally, we note the following:

> In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court considered five factors in determining whether an identification was suggestive: (1) the witness's opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description;

10

(4) the level of the witness's certainty displayed at the time of the identification; and (5) the length of time elapsed between the crime and the identification.

*State v. Jones*, 96-1581, p. 17 (La.App. 3 Cir. 6/4/97), 696 So.2d 240, 249.

Deputy Handy testified that he had an excellent opportunity to view the defendant during the narcotics transaction and that his training assisted him in taking mental notes concerning future identification. There is no evidence concerning any prior description given by Deputy Handy, but at trial he testified to a high degree of certainty in making his identification. With regard to his involvement with the photographic lineup process, slightly over four months passed between the narcotics transaction itself and Deputy Handy's participation in the lineup. We do not find that this photographic lineup gave rise to a substantial likelihood of misidentification. Additionally, the defendant suffered no prejudice by the lineup procedure because Deputy Handy testified at trial and was subject to cross examination on his participation in the photographic lineup. *See, e.g. State v. Vaughn*, 378 So.2d 905 (La.1979).

We do not find that the failure of the defendant's counsel to pursue a claim of suggestiveness with regard to the photographic lineup constitutes ineffective assistance of counsel. We find no merit in this assignment of error.

### Pro Se Assignment of Error Number Five

In this assignment of error, the defendant challenges the absence of the opening and closing arguments in the record. This complaint is in error as those arguments are in the record. We find no merit in this assignment of error.

### Pro Se Assignment of Error Number Six

In this assignment of error, the defendant again complains that his trial counsel was ineffective in that he failed to conduct an appropriate level of pretrial investigation which resulted in his failure to file a pretrial motion to suppress the

11

evidence against him. Resolving such an argument entails matters outside the record and should be relegated to the post-conviction relief process wherein a record can be further developed.

***Pro Se Assignment of Error Number Seven***

In this final pro se assignment of error, the defendant essentially repeats his argument that the evidence was insufficient to support his conviction or his arrest. We have already considered this issue in the first pro se assignment of error and found it to be without merit. We need not reconsider that finding. We find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's conviction in all respects.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2—16.3.